Dear Senator Morgan,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 Subject to the provisions of 68 O.S. 2001, § 2846(C):
 1. May a county hire private counsel to assist in the reassessment of property which has been grossly undervalued due to false representations or concealment?
 2. May a county hire private counsel to assist in their visual inspection programs under 68 O.S. 2001 Supp. 2003, §§ 2820through 2828?
 3. May a county hire private counsel to assist the assessor or district attorney in post-assessment enforcement proceedings?
 I. The Ad Valorem Tax Assessment Process
¶ 1 To answer your questions, we must first review the ad valorem property tax assessment process, including the authority of counties to assess and collect taxes.
¶ 2 County assessors are charged with assessing property located in their respective counties for the purposes of taxation as provided by law. 68 O.S. 2001, § 2815[68-2815].[1] Property subject to ad valorem[2] taxation under the Ad Valorem Tax Code, 68 O.S. 2001 Supp. 2003, §§ 2801 through 3152,[3]
is to be listed for taxation by the property owner or the owner's agent. Id. §§ 2831(A); 2832. Nonexempt corporations are subject to taxation in the same manner as individuals, and must file sworn lists or schedules of their taxable property in each county with that county's assessor. Id. § 2838(A). If any taxable personal property is not listed with the county assessor by March 15 of any year, the county assessor is to assess it as soon as the omission is discovered. Id. § 2843(A). The assessor may add omitted personal property to the tax rolls retroactively for up to three years and include interest at the rate of 12 percent from the date when the taxes should have become delinquent. Id.
§ 2844(A). Section 2844 provides as follows:
 A. If any real, personal, railroad, air carrier or public service corporation property is omitted in the assessment of any prior year or years, and the property thereby escapes just and proper taxation, at any time and as soon as such omission is discovered, the county assessor or the county board of equalization, or the State Board of Equalization in the case of public service corporation property or railroad and air carrier property, whose duty it is to assess the class of property which has been omitted, shall at any time cause such property to be entered on the assessment rolls and tax rolls for the year or years omitted, not to exceed the last fifteen (15) years as to real property and the last three (3) years as to personal property, and shall, after reasonable notice to the parties affected, in order that they be heard, assess such omitted property for said periods and cause to be extended against the same on the tax rolls for the current year all arrearage of taxes properly accruing against it, including therein interest thereon at the rate of twelve percent (12%) per annum from the time such tax should have become delinquent.
 B. If any tax on property subject to taxation is prevented from being collected for any year or years by reason of any erroneous proceedings, or failure to give notice, or otherwise, the amount of such tax which such property should have paid or should have been paid thereon shall be added to the tax on such property for the current year, and if for want of sufficient time or for any cause such assessment cannot be entered, and the tax thereon extended on the tax rolls for the current year, the same shall be done the following year.
Id.
¶ 3 Each county assessor is to conduct a comprehensive program which will result in the individual visual inspection of all taxable property in the county at least once every four years.68 O.S. 2001, § 2820[68-2820](A). The county assessor has authority to hire appraisers.[4] The proposed plan is to be submitted to the Oklahoma Tax Commission for review; the Commission will approve the plan "if the plan and resources are adequate." Id.
§ 2820(C). Assessors are to "develop a plan" that details, among other elements, "the resources and budget proposed to complete the inspections." Id. The cost of the program is to be spread among the recipients of the revenues, such as towns, school districts and the county government. 68 O.S. Supp. 2003, §2823[68-2823](A), (B). The program, limited at inception in 1988 to real property, was expanded to include personal property in 2001.See 2001 Okla. Sess. Laws ch. 358, § 18.
 II. Omitted And Undervalued Property
¶ 4 Title 68 O.S. 2001, § 2844[68-2844] addresses property omitted
from the tax rolls, while Section 2846 addresses property listedon the tax rolls but undervalued due to false representations or concealment by the taxpayer.
¶ 5 Section 2846 provides as follows:
 A. Whenever real or personal property has in any year, through false representations or concealments willfully and fraudulently made by the owner or agent in listing the same for assessment, been grossly undervalued and has escaped for that year just and proper taxation, the county assessor or the State Board of Equalization, whose duty it is to assess such class of property shall, at any time within two (2) years from the date of such original undervaluation, cause such property to be entered on the assessment roll and tax books for the year or years so undervalued.
 B. After reasonable notice to the party affected, in order that he may be heard, the county assessor or State Board of Equalization shall reassess such undervalued property and cause same to be extended against such property on the tax list or rolls for the current year, with all arrearage of taxes thus properly accruing against it, including interest thereon at the rate of six percent (6%) per annum from the time such tax should have become delinquent.
 C. As to such property so grossly undervalued in assessment no contract shall be made with anyone by either the State Board of Equalization, or the board of county commissioners, to pay anyone a commission or in any way causing same to be reassessed; but it shall be the duty of the State Board of Equalization, with the assistance of the Attorney General and the county assessor, with the assistance of the district attorney, to make and cause such reassessment to be made.
Id.
¶ 6 The history of Section 2846(C) is of interest. The language first appeared in 1915 as an amendment to Section 7309 Revised Laws of Oklahoma, which allowed real or personal property "grossly undervalued on account of false representations or concealments" from previous years to be added to the tax rolls for the current year and reassessed, with interest.[5]
Bunn's Ann. Supp. 1915, ch. 72, art. II, § 7309. The amendment included the current language which prohibited the payment of a commission[6] for "causing same to be reassessed," but also specifically allowed boards of county commissioners to contract for the discovery of omitted property.[7] Id. In 1921, 1931 and 1941 Section 7309 was repealed and then recodified, leaving substantially the now current language. See O.S. Supp. 1921, ch. 84, art. III, § 9597; O.S. Supp. 1931, ch. 66, art. XVII, § 12587; 68 O.S. 1941, § 15.21[68-15.21] (now codified at 68 O.S.2001, § 2846[68-2846]).
¶ 7 During the 1920s and 1930s, "tax ferrets" were commonly used by county assessors to locate personal property that had been omitted from assessment and help assessors place it on the rolls for the collection of unpaid taxes. See, e.g., Ingram v.Chappell, 260 P. 20, (syllabus) (Okla. 1927);[8] PhiKappa Psi v. State, 53 P.2d 1130 (Okla. 1936) (this proceeding was brought by the tax ferret); State v. Chickasha Milling Co.,71 P.2d 981, (syllabus ¶¶ 4, 6, 7) (Okla. 1937). Under Oklahoma's "tax ferret" statute,[9] the board of county commissioners was authorized to hire a person to assist the "proper officers of the county in the discovery of property not listed and assessed, . . . and fix compensation at not to exceed fifteen per cent. of the taxes recovered. . . ." Ingram,260 P. at 21 (quoting Comp. St. 1921 § 9798).[10] A tax ferret, however, could not prosecute an appeal in a case in which he had been hired by the county to discover property, because he did not have a direct and immediate pecuniary interest in the case.Conner v. Drummond, 46 P.2d 447, 448 (Okla. 1935). Thus, historically the statutes distinguished between omitted
property under Section 481, in which tax ferrets could be paid as described in Ingram, and fraudulently and grossly undervalued
property under the predecessor to today's Section 2846(C), under which no outside contracts could be let.
 III. The Use Of Outside Contracts By Counties For Tax Assessment And Collection Purposes
¶ 8 Your questions focus on whether a county can contract with outside parties to assist in the proper assessment of either omitted or undervalued properties, or to assist in post-assessment legal work.
¶ 9 In ad valorem tax cases, the district attorney represents the interests of the county assessor in appeals of valuations.68 O.S. 2001 § 2880.1[68-2880.1](D). Under Section 2880.1(E), the assessor's valuation and procedures are presumed correct. The district attorney or the county assessor may request the assistance of the general counsel or another attorney from the Oklahoma Tax Commission on such valuation appeals, and the board of county commissioners and county excise board have a "mandatory duty . . . to provide the necessary funds . . . to pay the costs necessary to be incurred" for such appeals. Id. § 2880.1(D).
¶ 10 A plain reading of subsection C of Section 2846 indicates that the county assessor may obtain the assistance of the district attorney "to make and cause such reassessment to be made." Id. The statutory duties of the district attorney are set forth as follows:
 The district attorney, assistant district attorneys, or special assistant district attorneys authorized by subsection C of Section 215.37M of this title, shall appear in all trial courts and prosecute all actions for crime committed in the district, whether the venue is changed or not; the district attorney or assistant district attorneys shall prosecute or defend in all courts, state and federal, in any county in this state, all civil actions or proceedings in which any county in the district is interested, or a party unless representation for the county is provided pursuant to subsection A of Section 215.37M of this title; and the district attorney or assistant district attorneys shall assist the grand jury, if required, pursuant to Section 215.13 of this title. The district attorney may at all times request the assistance of district attorneys, assistant district attorneys or district attorney investigators from other districts who then may appear and assist in the prosecution of actions for crime or assist in investigation of crime in like manner as assistants or investigators in the district.
19 O.S. 2001, § 215.4[19-215.4]. In addition, the district attorney provides legal advice to the board of county commissioners and other county officers. Id. § 215.5.
¶ 11 Title 19 O.S. 2001, § 215.37M[19-215.37M] specifies the circumstances in which the county can obtain the services of private attorneys. In any civil case in which the county is interested or is a party, and in which the district attorney is required to represent the county pursuant to Section 215.4 of Title 19, the district attorney and the board of county commissioners can arrange for legal representation to be provided by a contract with a private attorney. Id. § 215.37M. "The costs of such contract shall be paid by the board of county commissioners out of its account for general government operation, or other account, as may be appropriate." Id. § 215.37M(A). In civil cases the fees are to be paid by the board of county commissioners (id. § 215.37M(A), (B)), and in criminal cases the "special assistant district attorney[s]" are to be paid from the District Attorney's budget. Id. § 215.37M(C). The county may therefore retain a private attorney under Section 215.37M(A) to assist in representing the county in appeals from tax assessment cases. Both the assessor and the district attorney can call upon the legal resources of the Oklahoma Tax Commission to assist in handling appeals under 68O.S. 2001 § 2880.1[68-2880.1](D), with the county paying the costs. Both19 O.S. 2001, § 215.37M[19-215.37M](A) and 68 O.S. 2001, § 2880.1[68-2880.1] implicitly allow broad discretion as to how outside counsel hired by district attorneys are to be compensated.
¶ 12 The statutes therefore distinguish between the discovery
of omitted taxable property, the undervaluation of listed property, and the enforcement of the assessor's assessment of taxes on property. Nothing in the visual inspection program or Section 2844 of Title 68 prohibits the use of contract services for the discovery of omitted taxable property. Under certain circumstances, 19 O.S. 2001, § 215.37M[19-215.37M](A), authorizes the use of outside attorneys.
 IV. Conclusion
¶ 13 No person, other than the district attorney or Attorney General, may be retained, either by contract or commission, to assist the county assessor in causing grossly undervalued property to be reassessed pursuant to Section 2846. However, if an attorney's role is to assist the district attorney or the assessor in post-assessment enforcement proceedings, he or she may be compensated in the same manner as any other legal counsel under 19 O.S. 2001, § 215.37M[19-215.37M](A) or 68 O.S. 2001, § 2880.1 [68-2880.1].
¶ 14 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Title 68 O.S. 2001, § 2846(C) prohibits counties from hiring anyone to assist in the reassessment of property which has been grossly undervalued due to false representations or concealment.
 2. County assessors may use outside appraisers as part of their comprehensive visual inspection program. 68 O.S. 2001, § 2826[68-2826].
 3. Any post-assessment legal action to collect or enforce assessments is governed by other applicable statutes. What statutes, if any, would apply cannot be addressed in an Attorney General's Opinion, as it would involve questions of fact. 74 O.S. 2001, § 18b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 WALTER W. JENNY JR. Assistant Attorney General
[1] Under Okla. Const. art. X, § 21(A), the State Board of Equalization assesses railroad and public service corporation property.
[2] "Ad valorem" means "property tax: levied according to assessed value." Webster's Third New International Dictionary 30 (3d ed. 1993).
[3] "Articles 28, 29, 30 and 31 of Title 68 of the Oklahoma Statutes shall be known and may be cited as the Ad Valorem Tax Code." 68 O.S. 2001, § 2801[68-2801].
[4] "Appraisers whose services may be obtained by appointment by the assessor or who may be assigned by the Oklahoma Tax Commission, upon request of the county assessor, to assist any county assessor shall act in an advisory capacity only. Valuations made by such appraisers shall not be binding upon the assessor. All valuations made pursuant to the Ad Valorem Tax Code shall be made and entered by the assessor pursuant to law." 68O.S. 2001, § 2826[68-2826].
[5] This amendment was passed with an emergency clause six days after the decision was issued in Prairie Oil Gas Co. v.Cruce, 147 P. 152 (Okla. 1915). In Cruce the court held that the Board of Equalization, once its work for a year was completed and certified, did not have statutory authority under existing law to reconvene and either reassess property already assessed, or add omitted property. Id. (syllabus ¶¶ 2, 4, 5). Instead, the Board had to wait until the next year's assessment section to add property which had been omitted from the previous year. Id.
(syllabus ¶ 3).
[6] "Commission" is defined as "a fee paid to an agent or employee for transacting a piece of business or performing a service." Webster's Third New International Dictionary 457 (3d ed. 1993). "Contingent fee" is "a fee for services (as of a lawyer or agent) to be paid in the event of success in a particular transaction usu. as a specified percentage of the sum realized for the client or principal." Id. at 493. For purposes of this Opinion we will treat the two terms as synonymous and interchangeable.
[7] The following phrase was added in 1915 as part of the amendment:
 [A]nd provided further, that as to such property so grossly undervalued in assessment, no contract shall be made with anyone by either the State Board of Equalization, or the Board of County Commissioners, to pay anyone a commission for in any way causing same to be reassessed; but it shall be the duty of the State Board of Equalization, with the assistance of the Attorney General, and the county assessor, with the assistance of the county attorney, to make and cause such reassessment to be made, as aforesaid; provided, however, this shall not be construed to prevent boards of county commissioners from making contracts for the discovery of omitted property, as provided by section 7449 of the Revised Laws of Oklahoma, 1910."
 Bunn's Ann. Supp. 1915, ch. 72, art. II, § 7309 (emphasis added). Note, both Sections 7449 and 7309 were repealed in 1941. See Okla. Sess. Laws 1941, tit. 68, ch. 2, § 64. New law replaced both sections in 1941 and in Section 7309 omitted the above emphasized phrase. See 68 O.S. 1941, §§ 15.20[68-15.20], 15.21 (now codified at 68 O.S. 2001, §§ 2844[68-2844],
2846).
[8] The Supreme Court noted Oklahoma law did not expressly provide how tax ferrets are to be paid.
 It is silent as to whether or not he shall file his claim for services with the county commissioners and have it allowed by them and a warrant issued in payment therefor. It authorizes the county commissioners to enter into a contract with him, and fixes the compensation at an amount not to exceed 15 per cent. of the taxes collected.
. . . .
Under the Tax Ferret Act, when the taxes are paid into the hands of the county treasurer it is his duty to set aside, in a special fund, the amount claimed by the tax ferret under his contract with the county commissioners and to hold the same until he is authorized to pay the same out by the county commissioners. Since the Legislature has created a special fund out of which the tax ferret shall receive his compensation, the treasurer is authorized to pay the same to the tax ferret on proper order of the county commissioners, without the issuance of what is technically known in our law as a warrant.
Ingram, 260 P. at 21-22.
[9] See 1925 Okla. Sess. Laws ch. 175, § 1 (repealed O.S. Supp. 1939, ch. 66, art. IV, § 13).
[10] In 1921, Section 7449 of the Revised Laws of 1910 was repealed and recodified to Section 9798 (now codified at 68 O.S.2001, § 2844[68-2844]).